# EXHIBIT 1

# TO

# NOTICE OF REMOVAL



1   Stacy M. Gabriel (#015071)
    Andrew S. Ashworth (#016356)
2   GABRIEL & ASHWORTH, P.L.L.C.
    10105 E. Via Linda
3   Suite 103, No. 392
    Scottsdale, Arizona 85258
4   (480)368-2790
    andrew@gabrielashworth.com
5
    Attorneys for Plaintiff
6
7              IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
8
9               IN AND FOR THE COUNTY OF MARICOPA
10  BROOKFIELD EQUINOX, LLC, an          )   No.: CV2015-004547
    Arizona corporation,                 )
11                                        )   VERIFIED COMPLAINT
            Plaintiff,                    )
12                                        )   (Breach of Duty of Loyalty, Breach of
        vs.                               )   Contract, Breach of Implied Duty of
13  MITCHELL GOODMAN, an individual;      )   Good Faith and Fair Dealing, Tortious
    LLOYD BAYLARD, an individual; PAX     )   Interference with Contract, Tortious
14  TECHNOLOGY, INC., a Florida           )   Interference with Business
    corporation; BLACK & WHITE            )   Expectancies, Unfair Competition,
15  CORPORATIONS I-X, and JOHN AND        )   Misappropriation of Trade Secrets,
    JANE DOES I-X.                        )   Unjust Enrichment, Injunctive Relief)
16                                        )
            Defendants                    )
17                                        )
                                          )
18                                        )

19      Plaintiff Brookfield Equinox, LLC ("Equinox"), through counsel undersigned, for its

20  claims against Defendants Mitchell Goodman ("Goodman"), Lloyd Baylard ("Baylard") and PAX

21  Technology, Inc. ("PAX"), alleges as follows:

22                          **Parties, Jurisdiction and Venue**

23      1.  Equinox is an Arizona corporation that is authorized to and is doing business in

24  Maricopa County, Arizona.

25      2.  Equinox is a provider of payment processing systems. Equinox designs, manufactures

26  and sells a wide array of payment terminals, and provides associated applications and services, to

1  customers throughout the United States.  Equinox's principal place of business is in Scottsdale,

2  Arizona.

3      3. On or about February 2014, Equinox acquired certain assets from Equinox Payments,

4  LLC, an Arizona corporation ("Equinox Payments"), including the payment processing

5  technology owned by Equinox Payments, and the right to use the Equinox name.

6      4. Defendant Goodman is a resident of California.

7      5. Prior to February 2014, Goodman was employed by Equinox Payments as a sales

8  executive.  Goodman's primary duties and responsibilities were to identify and pursue sales

9  opportunities for Equinox Payments, with a primary emphasis on major accounts.

10      6. Concurrent with Equinox's purchase of certain assets of Equinox Payments in

11  February 2014, Equinox offered Goodman, and he accepted, employment by Equinox as a sales

12  executive.

13      7. As a condition of his hire by Equinox, Goodman signed and agreed to be bound by a

14  Confidentiality and Intellectual Property Agreement (the "Goodman Confidentiality

15  Agreement").

16      8. The Goodman Confidentiality Agreement provides at Section 6.2 that Goodman

17  irrevocably submits to the jurisdiction of each state or federal court in any state over any suit,

18  action or proceeding arising out of or relating to the agreement.

19      9. The Goodman Confidentiality Agreement further provides at Section 6.10 that the

20  agreement shall be governed by and construed under the laws of the state of Arizona.

21      10. Pursuant to the terms of the Goodman Confidentiality Agreement, Goodman has

22  consented to this Court's jurisdiction and agreed that venue is proper in this court.

23      11. Defendant Baylard is a resident of Georgia and/or Florida.

24      12. Baylard was employed by Equinox Payments as a vice president of sales from 2008

25  until he separated  from the company, effective November 15, 2013.

26      13. On December 4, 2013, Baylard and Equinox Payments entered into a General Release

1   and Separation Agreement (the "Baylard Separation Agreement").

2      14. As consideration for the benefits in the Baylard Separation Agreement, Baylard made
3   certain promises concerning his post-employment activities, including the promise not to disclose
4   proprietary information of Equinox Payments, and the promise not to solicit Equinox Payments'
5   customers or employees for a period of 12 months after the termination of his employment.

6      15. The restrictive covenants contained in the Baylard Separation Agreement are designed
7   to protect the integrity and good will of the Equinox Payments business, and constitute an asset of
8   the business that was acquired by Equinox.

9      16. The Baylard Separation Agreement provides at Section 5(c) that Baylard consents to
10   venue and jurisdiction in the Superior Court of Maricopa County, State of Arizona, and the U.S.
11   District Court for the District of Arizona in any action commenced to enforce the Baylard
12   Agreement.

13      17. Pursuant to the terms of the Baylard Separation Agreement, Baylard has consented to
14   this Court's jurisdiction and agreed that venue is proper in this court.

15      18. Defendant PAX is a Florida corporation with its principal place of business in Florida.
16   PAX carries on business throughout the United States, including Arizona, and maintains an office
17   in Tempe, Arizona.

18      19. PAX is the United States subsidiary of a Chinese-based supplier of payment terminals,
19   and is a direct competitor of Equinox.

20      20. PAX has engaged in a systematic and calculated raid of Equinox personnel for the
21   purpose of building and selling a new line of retail payment terminals known as PX5 and PX7,
22   that is specifically designed for the North American market in competition with Equinox's
23   products.   PAX targeted for hire specific Equinox personnel who were instrumental in
24   developing, marketing and selling the Equinox products that compete with PX5 and PX7 so it
25   could exploit for its own financial benefit the proprietary and trade secret information the targeted
26   personnel acquired during their respective employment at Equinox and/or Equinox Payments.

3

21. Upon information and belief, PAX's competitive products are ready to be launched and PAX has begun to promote and market it to businesses, including businesses with whom the raided Equinox personnel developed relationships, called on and solicited on behalf of Equinox and Equinox Payments.

22. Since March 2014, PAX has hired away at least 8 key Equinox employees to work in the same types of jobs they held at Equinox, including the following; Mohammad Arif (Manager, Retail Applications), Anthony Fernandez (Product Manager), Roberta Lynn Davis (Account Manager), Lutfi Effendi (Manager, Quality Assurance), Bin Meng (Diagnostic Engineer), Henry Seng (Quality Assurance Specialist), Goodman (Sales Executive) and James H Smith (Customer Support Specialist).

23. Defendants Goodman and Baylard are presently employed by PAX.

24. Defendants have engaged in activities in Arizona and directed towards Arizona.

25. Black and White Corporations I-X and John and Jane Does I-X are persons or entities that may be responsible for some or all of the events giving rise to Plaintiff's claims in this action, or may otherwise bear legal responsibility for some or all of Plaintiff's damages herein, but whose identity is presently unknown to Plaintiff. Plaintiff will seek leave to amend the Complaint to name any such persons or entities upon learning their identity.

26. Many of the events giving rise to this action occurred within Maricopa County, Arizona.

27. Jurisdiction and venue as to all defendants are proper in this Court.

### Equinox Business and Confidential Information

28. The payment services industry is highly competitive and the preservation of confidential information and trade secrets is absolutely critical to the continued success and viability of Equinox.

29. A competitor's exposure to and use of Equinox's confidential information and trade secrets will cause irreparable harm to Equinox.

4

30. Equinox has taken steps to safeguard its confidential information and trade secrets to prevent this information from being exploited by a competitor. Specifically, Equinox requires all employees who have access to confidential information to sign a Confidentiality Agreement that confirms the employees will strictly maintain the integrity of that information, both during and after their employment with Equinox. The Equinox Employee Handbook, which is distributed to all employees, and which all employees must acknowledge having received and reviewed, cautions all employees that disclosure of confidential information is strictly prohibited. The Employee Handbook also incorporates the Brookfield Asset Management Code of Business Conduct and Ethics, which stresses the requirement that all non-public information is to be kept confidential, both during and after the termination of employment. The Code of Business Conduct and Ethics specifically directs that employees should not email confidential information to their personal email accounts. The Equinox facility is security monitored and can only be accessed by a badge. The facility is further segregated into zones that can only be accessed by properly authorized personnel. Electronic data is only available to certain personnel and can only be accessed through an encrypted password.

### Goodman's Employment With Equinox

31. Goodman commenced employment with Equinox in February 2014 as a major account sales representative.

32. As a condition of his hire, Goodman executed the Goodman Confidentiality Agreement.

33. The Goodman Confidentiality Agreement provides at Section 1.1 that Goodman will not at any time, whether during or after the termination of his employment with Equinox, reveal to any person or entity any of the Confidential Information (as defined therein) of Equinox, and not use or attempt to use any such Confidential Information in any manner that may directly or indirectly injure or cause loss to Equinox. The term Confidential Information is specifically defined to include customer requisitions for products, data regarding customers and prospective

5

1 customers, bidding specifications and practices, costs and pricing data, new device or product

2 information and evaluations, or any similar information received from customers.

3  34. The Goodman Confidentiality Agreement provides at Section 1.4 that upon

4 termination of employment, Goodman shall within 2 days deliver to Equinox all Confidential

5 Information in his possession or control, and destroy any remaining electronic versions of such

6 Confidential Information.

7  35. The Goodman Confidentiality Agreement further provides at Section 4(a) that

8 Goodman will not during his employment or for a period of one year following the termination of

9 his employment either directly or indirectly hire, solicit, persuade or entice any Equinox

10 employee to discontinue his employment with Equinox.

11  36. The Goodman Confidentiality Agreement further provides at Section 4(b) that

12 Goodman will not during his employment or for a period of one year following the termination of

13 his employment either directly or indirectly attempt to divert from Equinox or solicit a customer

14 or supplier of Equinox.

15  37. As a major accounts sales executive for Equinox, Goodman was intimately familiar

16 with Equinox's Confidential Information, particularly information concerning Equinox's

17 relationships with its customers and its sales efforts.

18  38. Goodman was the lead major accounts salesperson at Equinox, and in that capacity

19 was primarily responsible for Equinox's sales efforts for these customers.

20  39. One of the major accounts of Equinox is Sears, Roebuck & Company ("Sears"), a

21 large department store retailer.

22  40. Beginning on or about August 2014, Goodman led an Equinox sales team to solicit

23 new payment terminal business in response to a request for proposal from the K-Mart division of

24 Sears.  A final proposal was submitted in or about October 2014.

25  41. As late as April 2015, Equinox was provided with positive feedback from K-Mart with

26 respect to the proposal that had been submitted, and was taking steps to meet the timing and

1   implementation requirements identified by K-Mart.

2   42.  Unbeknownst to Equinox, defendants had begun to conspire by at least November

3   2014, and possibly much earlier, to extract Confidential Information from Goodman regarding the

4   impending K-Mart deal, take steps to divert that business away from Equinox and to PAX, and

5   ultimately hire Goodman to close the deal for PAX.

6   43. Goodman interviewed with PAX in November 2014, including meeting with former

7   Equinox employees, and was extended an offer of employment by PAX on or about November

8   25, 2014.

9   44. Goodman provided PAX, through Baylard, with specific details concerning the status

10  of Equinox's negotiations with K-Mart, including the names and contact information of relevant

11  individuals at K-Mart responsible for the purchase, details of Equinox's pricing, and other highly

12  Confidential Information relating to Equinox's sales efforts.

13  45. By way of examples only, on December 15, 2014, Baylard asked that Goodman

14  provide him with marketing materials from Equinox to assist Baylard in putting together PAX's

15  marketing materials "to make sure [PAX is] competitive."

16  46. On January 5, 2015, Baylard blind-copied Goodman on an email to Drew Soinski at

17  JP Morgan Chase requesting a meeting to discuss PAX's new products.

18  47. On February 10, 2015 – more than 2 months before Goodman resigned -- Baylard

19  asked that Goodman provide Baylard with the email address of a specific Sears employee who

20  was actively involved in the K-Mart payment processing project.  Goodman provided the email

21  address to Baylard.  Baylard then blind-copied Goodman on an email communication to K-Mart

22  where Baylard requested that K-Mart participate in a conference call with PAX to discuss K-

23  Mart's payment processing needs.

24  48. Goodman actively encouraged and assisted PAX, through its employee Baylard, to

25  pursue a competitive bid with K-Mart.  PAX utilized the Confidential Information that it had

26  illegally obtained from Goodman in order to pursue a rival bid with K-Mart.

49. On February 10, 2015, when Baylard informed Goodman that K-Mart had agreed to a meeting with PAX, Goodman's response to Baylard was "Awesome!!!!!!!  Good luck!"

50. On February 10, 2015 Goodman also communicated with Baylard about setting up a meeting with Ross Stores on behalf of PAX, suggested a timeframe for that meeting, and provided Baylard with advice on a software vendor that he should talk to in order to prepare for the Ross Stores meeting.

51. Since May 1, 2015, the level of communication from K-Mart to Equinox has diminished substantially.  Upon information and belief, K-Mart is in the process of considering the rival bid from PAX.

52. Upon information and belief, defendants have engaged in similar actions with respect to other existing and prospective customers of Equinox.  The full extent of such actions will not be known until Equinox has been provided the opportunity to conduct full discovery.

53. Goodman tendered a notice of resignation from Equinox on April 24, 2015.  Goodman provided two weeks' notice, and his last day of employment with Equinox was May 1, 2015.

54. On April 20, 2015, several days before he announced his resignation from Equinox, Goodman downloaded and emailed to his personal email address Confidential Information of Equinox, including details of Equinox's customers and prospective customers.

55. Prior to his resignation, Goodman attempted to delete all sent and received emails from his Equinox email address.

56. On May 1, 2015, while still an employee of Equinox, Goodman sent an email to Baylard and asked - "Did you hear back from Andy [Chou, President and CEO of PAX] regarding if PAX can meet the Kmart delivery schedule?"

57. Goodman commenced employment with PAX on May 4, 2015, as a sales executive. He reports to Baylard.  At the time of his departure from Equinox, Goodman denied that he was going to work for PAX, thereby delaying by several weeks Equinox's ability to discover and mitigate defendants' illegal actions that are the subject of this lawsuit and further placed at risk

8

1   Equinox's ability to close the K-Mart deal.

2                    **Post-Employment Actions by Goodman**

3       58. Goodman's last day of employment with Equinox was May 1, 2015.

4       59. Since this time, Goodman has continued to improperly utilize Equinox's Confidential

5   Information in order to solicit business away from Equinox.

6       60. Immediately upon commencing employment with PAX, Goodman sent an email to K-

7   Mart that included the following language - "I know you are close to finalizing the decision for

8   Kmart. We are confident PAX can meet and exceed the requirements at lower pricing than you

9   are currently planning." The language of this email was drafted by Baylard, and was sent with

10   PAX's full knowledge and support.

11       61. Upon information and belief, Goodman has sent an email in similar terms to other

12   Equinox customers that he is intimately familiar with, including but not limited to Walgreens,

13   Hertz, Supervalu and Sprint, utilizing Equinox Confidential Information.

14       62. The identity of Equinox's customers, including the specific contacts at those

15   customers, the payment system needs and applications of those customers, proposed pricing and

16   so forth is Confidential Information belonging to Equinox, and is known to Goodman only by

17   reason of his work for Equinox.

18       63. Goodman's misappropriation of the Confidential Information violates the Goodman

19   Confidentiality Agreement and was done with the full knowledge and consent of PAX and

20   Baylard. PAX and Baylard had knowledge of the Goodman Confidentiality Agreement since at

21   least November 2014.

22       64. The improper and unlawful acts of defendants have caused, and, unless restrained,

23   will continue to cause, substantial harm to Equinox.

24       65. Upon information and belief, Goodman has solicited, persuaded or enticed Equinox

25   employees, including but not limited to James H. Smith, to leave employment with Equinox and

26   join PAX. Smith resigned from Equinox a few days after Goodman and, upon information and

1    belief, was hired by PAX in a Sales Engineering capacity. Smith has detailed knowledge of the

2    proposed Equinox implementation for K-Mart. Smith deleted all information from his Equinox

3    work laptop computer immediately prior to his departure.

4                                    **Improper Actions by Baylard**

5           66. Equinox Payments employed Baylard in a sales position until the time of his

6    separation in November 2013.

7           67. Baylard signed the Baylard Separation Agreement on December 4, 2013, pursuant to

8    which he received payments and other benefits valued at almost $100,000, in exchange for

9    agreeing to abide by certain post-employment covenants.

10          68. Under Section 3(e) of the Baylard Separation Agreement, Baylard acknowledged that

11   he possessed trade secrets and other confidential and proprietary information of Equinox

12   Payments, and promised to retain that information in strict confidence and to not communicate or

13   disclose any of that information to any third party.

14          69. The Baylard Separation Agreement further provides at Section 3(e)(iii) that Baylard

15   will not for a period of 12 months after termination of his employment with Equinox Payments

16   encourage, solicit or otherwise attempt to persuade any other employee of Equinox Payments to

17   leave the company.

18          70. Baylard joined PAX on or about November 2014.

19          71. Upon information and belief, Baylard has revealed trade secrets and other confidential

20   and proprietary information of Equinox Payments to PAX.

21          72. Upon information and belief, Baylard encouraged, solicited or otherwise attempted to

22   persuade employees of Equinox Payments and Equinox to leave the company, including but not

23   limited to Goodman, within the 12 month period.

24          73. Baylard, as an employee and agent of PAX, has actively encouraged Goodman to

25   breach his contractual, statutory and common law duties to Equinox.

26          74. Baylard, as an employee and agent of PAX, has knowingly solicited Confidential

                                              10

Information of Equinox from Goodman, and has used that information, despite his knowledge that the information should have been protected, in order to financially enrich himself and PAX.

### Improper Actions by PAX

75. PAX has pursued a scheme to crush Equinox through unfair competition.

76. As part of this scheme, PAX has hired a series of key personnel from Equinox, notwithstanding that PAX is aware that these individuals are under contractual, statutory and common law obligations to maintain the integrity of Equinox's Confidential Information and preserve Equinox's customer and employee relationships.

77. PAX hired key Equinox personnel Mohammad Arif in March 2014 and Anthony Fernandez in April 2014. Both Arif and Fernandez were exposed to and still possess substantial Confidential Information concerning Equinox and its products. In April 2014, Equinox wrote to both Arif and Fernandez to place them on notice that they continued to be bound by a confidentiality agreement with Equinox, the terms of which are substantially identical to the Goodman Confidentiality Agreement. These letters, together with copies of the confidentiality agreements, were also sent to PAX.

78. Notwithstanding its knowledge of Equinox's confidentiality agreement, PAX has encouraged and assisted a number of former Equinox employees, including Goodman, to violate that agreement, as well as the statutory and common law obligations they owe to Equinox.

79. PAX has knowingly solicited Confidential Information of Equinox from Goodman and Baylard, and has used that information, despite its knowledge that the information should have been protected, in order to financial enrich itself.

80. PAX has improperly utilized Equinox's Confidential Information in order to obtain an unfair advantage in the marketplace to the financial detriment of Equinox.

### Count One – Breach of Duty of Loyalty (Goodman)

81. Equinox incorporates by reference the allegations in the foregoing paragraphs of this Complaint as though fully set forth herein.

11

82. As an employee, Goodman owed a duty of the utmost loyalty to Equinox that required him to not take any actions inconsistent with the best interests of Equinox.

83. While he was employed by Equinox, Goodman knowingly revealed Confidential Information to a direct competitor and attempted to sabotage Equinox's contractual relations and expectancies with its customers (including K-Mart), and other employees (including James H. Smith). In doing so, Goodman breached his duty of loyalty to Equinox.

84. As a direct and proximate result of the breach of duty of loyalty by Goodman, Equinox has suffered damages in an amount to be proven at trial, and has suffered irreparable injury. Additionally, Equinox is entitled to have Goodman disgorge and return all salary, benefits, bonuses, and other perquisites of his employment relationship with Equinox during the period in which Goodman was in breach of his duty of loyalty.

85. Goodman's actions are outrageous and inexcusable. Goodman has acted with an evil mind, with malicious intent, and/or with a reckless disregard for the rights of Equinox and the certainty that his conduct would cause harm to Equinox in order to personally enrich himself. As a result of Goodman's conduct, Equinox is entitled to an award of punitive damages.

### Count Two – Breach of Contract (Goodman)

86. Equinox incorporates by reference the allegations in the foregoing paragraphs of this Complaint as though fully set forth herein.

87. The Goodman Confidentiality Agreement provides at Section 1.1 that Goodman will not at any time, whether during or after the termination of his employment with Equinox, reveal to any person or entity any of the Confidential Information of Equinox, and further that Goodman will not use or attempt to use any such Confidential Information in any manner that may directly or indirectly injure or cause loss to Equinox.

88. The Goodman Confidentiality Agreement provides at Section 1.4 that upon termination of employment, Goodman shall within 2 days deliver to Equinox all Confidential

12

1   Information in his possession or control, and destroy any remaining electronic versions of such
2   Confidential Information.

3       89. The Goodman Confidentiality Agreement further provides at Section 4(a) that
4   Goodman will not during his employment or for a period of one year following the termination of
5   his employment either directly or indirectly hire, solicit, persuade or entice any Equinox
6   employee to discontinue his employment with Equinox.

7       90. The Goodman Confidentiality Agreement further provides at Section 4(b) that
8   Goodman will not during his employment or for a period of one year following the termination of
9   his employment either directly or indirectly attempt to divert from Equinox or solicit a customer
10  or supplier of Equinox.

11      91. Goodman has revealed Confidential Information of Equinox to a competitor, both
12  before and after he resigned from Equinox.

13      92. Goodman has solicited, persuaded or enticed Equinox employees to leave Equinox
14  and join PAX, including James H. Smith, both during his employment at Equinox and after he
15  left.

16      93. Goodman has attempted to divert or solicit customers and prospective customers of
17  Equinox, both before and after he resigned from Equinox.

18      94. Goodman has improperly retained possession of Confidential Information and has
19  transferred highly confidential customer contact information to his personal e-mail.

20      95. Goodman has improperly attempted to delete electronically stored information from
21  his company email address.

22      96. Goodman's actions are a material breach of the Goodman Confidentiality Agreement.

23      97. As a consequence of Goodman's breach of contract, Equinox has sustained damages
24  and will continue to sustain damages in an amount to be determined at trial.

25      98. Equinox will continue to suffer irreparable injury unless Goodman is enjoined and
26  restrained from continuing to violate the express terms of the Goodman Confidentiality

1  Agreement. Equinox's damages cannot be adequately compensated solely through money

2  damages, thereby entitling Equinox to equitable relief in the form of an injunction.

3      99. Goodman acknowledged in Section 6.3 of the Goodman Confidentiality Agreement

4  that any breach of the agreement would cause immediate and irreparable damage, thereby

5  entitling Equinox to obtain a temporary restraining order and injunctive relief.

6      100. The Goodman Confidentiality Agreement provides at Section 6.8 that in the event

7  of litigation arising out of or in connection with the agreement the losing party agrees to pay to

8  the prevailing party the prevailing party's reasonable attorneys' fees and costs of suit.

9      101. Because this matter arises out of contract, Equinox is also entitled to recover its

10  costs and reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

11  **Count Three – Breach of Implied Covenant of Good Faith and Fair Dealing (Goodman)**

12      102. Equinox incorporates by reference the allegations in the foregoing paragraphs of

13  this Complaint as though fully set forth herein.

14      103. The Goodman Confidentiality Agreement contains an implied covenant of good

15  faith and fair dealing, which dictates that Goodman will refrain from acting in a manner that

16  would impair the right of Equinox to receive the benefits which flow from and which Equinox

17  had a right to expect from Equinox's relationship with Goodman.

18      104. Goodman has breached the implied covenant of good faith and fair dealing by,

19  *inter alia*, improperly using and disclosing Equinox's Confidential Information, assisting a

20  competitor while still employed with Equinox and improperly interfering in Equinox's business

21  both during and after his employment.

22      105. As a consequence of Goodman's breach of the implied covenant of good faith and

23  fair dealing, Equinox has sustained damages and will continue to sustain damages in an amount to

24  be determined at trial.

25      106. Equinox will continue to suffer irreparable injury unless Goodman is enjoined and

26  restrained from continuing to violate his implied duties to Equinox. Equinox's damages cannot

14

1   be adequately compensated solely through money damages, thereby entitling Equinox to

2   equitable relief in the form of an injunction.

3        107.   Goodman's actions are outrageous and inexcusable. Goodman has acted with an

4   evil mind, with malicious intent, and/or with a reckless disregard for the rights of

5   Equinox and the certainty that his conduct would cause harm to Equinox in order to personally

6   enrich himself. As a result of Goodman's conduct, Equinox is entitled to an award of punitive

7   damages.

8                    **Count Four – Breach of Contract (Baylard)**

9        108.   Equinox incorporates by reference the allegations in the foregoing paragraphs of

10  this Complaint as though fully set forth herein.

11       109.   The restrictive covenants in the Baylard Separation Agreement are for the

12  protection of the holder of Confidential Information associated with the business of Equinox

13  Payments.

14       110.   Equinox purchased the assets of Equinox Payments, including the protections

15  afforded by the Baylard Separation Agreement.

16       111.   Under Section 3(e) of the Baylard Separation Agreement, Baylard acknowledged

17  that he possessed trade secrets and other confidential and proprietary information of Equinox

18  Payments, and promised to retain that information in strict confidence and to not communicate or

19  disclose any of that information to any third party.

20       112.   The Baylard Separation Agreement further provides at Section 3(e)(iii) that

21  Baylard will not for a period of 12 months after termination of his employment with Equinox

22  Payments  encourage, solicit or otherwise attempt to persuade any other employee of Equinox

23  Payments to leave the company.

24       113.   Upon information and belief, Baylard has revealed Confidential Information of

25  Equinox to a competitor.

26       114.   Upon information and belief, within 12 months after Baylard's separation from

15

1   Equinox, he encouraged, solicited, or otherwise attempted to persuade Equinox employees to

2   discontinue their employment with Equinox and join PAX for the express purpose of competing

3   with Equinox.

4       115.   Baylard's actions are a material breach of the Baylard Separation Agreement.

5       116.   As a consequence of Baylard's breach of contract, Equinox has sustained damages

6   and will continue to sustain damages in an amount to be determined at trial.  Equinox is also

7   entitled to return of the separation benefits paid to Baylard as a result of his breach of the Baylard

8   Separation Agreement.

9       117.   Equinox will continue to suffer irreparable injury unless Baylard is enjoined and

10  restrained from continuing to violate the express terms of the Baylard Separation Agreement.

11  Equinox's damages cannot be adequately compensated solely through money damages, thereby

12  entitling Equinox to equitable relief in the form of an injunction.

13      118.   Because this matter arises out of contract, Equinox is also entitled to recover its

14  costs and reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

15      **Count Five – Tortious Interference With Contract (Baylard and PAX)**

16      119.   Equinox incorporates by reference the allegations in the foregoing paragraphs of

17  this Complaint as though fully set forth herein.

18      120.   At all material times, Baylard and PAX were aware that Equinox and Goodman

19  were parties to the Goodman Confidentiality Agreement.

20      121.   Through their actions, Baylard and PAX have intentionally, improperly,

21  wrongfully and maliciously interfered with Equinox's contractual relations with Goodman.

22      122.   Baylard's and PAX's interference is neither justified, privileged nor excusable.

23      123.   As a direct and proximate result of Baylard's and PAX's interference, Equinox

24  has suffered damages in an amount to be proven at trial.  Equinox will continue to suffer

25  irreparable injury unless Baylard and PAX are enjoined and restrained from further interference.

26  Equinox's damages cannot be adequately compensated solely through money damages, thereby

16

1   entitling Equinox to equitable relief in the form of an injunction.

2       124.   Baylard and PAX have acted with an evil mind, with malicious intent, and/or with

3   a reckless disregard for the rights of Equinox and the certainty that their conduct would cause

4   harm to Equinox in order to personally enrich themselves.  As a result of Baylard's and PAX's

5   conduct, Equinox is entitled to an award of punitive damages.

6   **Count Six – Tortious Interference With Contractual Expectancies (All Defendants)**

7       125.   Equinox incorporates by reference the allegations in the foregoing paragraphs of

8   this Complaint as though fully set forth herein.

9       126.   Equinox has a valid business expectancy to obtain the sales processing business

10  from K-Mart.

11      127.   Defendants each had full knowledge of Equinox's business expectancy.

12      128.   Through their actions, Defendants have intentionally, improperly, wrongfully and

13  maliciously interfered with Equinox's business expectancy.

14      129.   Defendants' interference is neither justified, privileged nor excusable.

15      130.   As a direct and proximate result of defendants' interference, Equinox has suffered

16  damages in an amount to be proven at trial.

17      131.   Upon information and belief, defendants either have or otherwise intend to

18  tortuously interfere with other contractual expectancies of Equinox.  Equinox will continue to

19  suffer irreparable injury unless defendants are enjoined and restrained from further interference.

20  Equinox's damages cannot be adequately compensated solely through money damages, thereby

21  entitling Equinox to equitable relief in the form of an injunction.

22      132.   Defendants have acted with an evil mind, with malicious intent, and/or with a

23  reckless disregard for the rights of Equinox and the certainty that their conduct would cause harm

24  to Equinox in order to personally enrich themselves.  As a result of defendants' conduct, Equinox

25  is entitled to an award of punitive damages.

26

17

## Count Seven – Unfair Competition (All Defendants)

133.   Equinox incorporates by reference the allegations in the foregoing paragraphs of this Complaint as though fully set forth herein.

134.   Defendants have engaged in an intentional plan to utilize Equinox's Confidential Information in order to further their own economic interests to the detriment of Equinox.

135.   Defendants have obtained Equinox's Confidential Information under circumstances where they know that the disclosing party is under a contractual, statutory and common law obligation to preserve the integrity of the Confidential Information.

136.   Notwithstanding that Defendants were at all material times fully aware that the disclosure of Equinox Confidential Information was improper, they have nonetheless deliberately utilized that Confidential Information to further their own economic interests.

137.   Defendants have solicited or encouraged Equinox employees to leave employment, in violation of contractual obligations not to engage in such actions.

138.   By engaging in these actions, defendants have employed improper means for an improper purpose.

139.   Defendants have already used, and will likely continue to use, Equinox's Confidential Information to divert Equinox business and thereby unfairly compete against Equinox, to Equinox's damage and detriment.

140.   Equinox will continue to suffer irreparable injury unless defendants are enjoined and restrained from continuing to unfairly compete against Equinox. Equinox's damages cannot be adequately compensated solely through money damages, thereby entitling Equinox to equitable relief in the form of an injunction.

141.   Defendants have acted with an evil mind, with malicious intent, and/or with a reckless disregard for the rights of Equinox and the certainty that their conduct would cause harm to Equinox in order to personally enrich themselves. As a result of defendants' conduct, Equinox is entitled to an award of punitive damages.

18

1

## Count Eight – Misappropriation of Trade Secrets (All Defendants)

2    142.    Equinox incorporates by reference the allegations in the foregoing paragraphs of

3 this Complaint as though fully set forth herein.

4    143.    Some or all of Equinox's Confidential Information, including the details of the

5 impending deal with K-Mart, constitute trade secrets within the meaning of A.R.S. §44-401.

6 These items have independent economic value because they are not generally known to, and not

7 readily ascertainable by proper means by other persons who can obtain economic value from their

8 use. Equinox has made, and continues to make, reasonable efforts to maintain the secrecy of

9 these items. At no time has Equinox given its consent, express or implied, that defendants may

10 use or disclose Equinox's trade secretion information.

11    144.    Defendants have misappropriated trade secrets of Equinox by disclosing such

12 information and/or using such information for their own benefit or for the benefit of others

13 without the express or implied consent of Equinox.

14    145.    At the time of defendants' disclosure and/or use of Equinox's trade secrets,

15 defendants knew or had reason to know that their knowledge of the trade secrets was acquired

16 under circumstances giving rise to a duty to maintain its secrecy.

17    146.    Defendants' misconduct is in violation of the Uniform Trade Secrets Act, A.R.S. §

18 44-401, et. seq.

19    147.    Defendants' misappropriation of Equinox's trade secrets was willful and malicious

20 entitling Equinox to exemplary damages as set forth in A.R.S. §44-403.

21    148.    As a direct and proximate result of defendants' misconduct, Equinox has suffered

22 damages, defendants have been unjustly enriched in amounts to be proven at trial, and Equinox

23 has suffered irreparable competitive injuries. Equinox is also entitled to recover its costs and

24 attorneys fees pursuant to A.R.S. § 44-404.

25    ## Count Nine – Unjust Enrichment (All Defendants)

26    149.    Equinox incorporates by reference the allegations in the foregoing paragraphs of

1   this Complaint as though fully set forth herein.

2   150.   Through their actions described above, defendants have improperly utilized
3   Confidential Information of Equinox for their own economic benefit.

4   151.   Defendants have been enriched by their actions to the impoverishment of Equinox.

5   152.   There is no justification for defendants to be enriched and for Equinox to be
6   correspondingly impoverished.

7   153.   Equinox is entitled to damages as a result of this unjust enrichment in an amount to
8   be determined at trial. Equinox is also entitled to the imposition of a constructive trust for all
9   proceeds that defendants have directly or indirectly derived from their misconduct.

10   WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against all
11   defendants, as follows:

12   A.   For an Order temporarily and permanently enjoining and restraining defendants,
13   their agents, employees, affiliates and all those acting in concert with them, from
14   disclosing, divulging or utilizing Equinox's Confidential Information, including
15   customer information.

16   B.   For an Order temporarily and permanently enjoining and restraining defendants,
17   their agents, employees, affiliates and all those acting in concert with them, from
18   soliciting payment processing business from K-Mart in response to the August
19   2014 request for proposal

20   C.   For an Order temporarily and permanently enjoining and restraining defendants,
21   their agents, employees, affiliates and all those acting in concert with them, from
22   contacting or soliciting, directly or indirectly, Equinox's customers for duration of
23   Goodman's 12-month non-solicit period, beginning from the date of the Order.

24   D.   For an Order that defendants, their agents, employees, affiliates and all those
25   acting in concert with them, be required to deposit with this Court any and all
26   Equinox property, and all copies thereof, within their possession, custody or

20

1    control.

2    E.    For the imposition of a constructive trust as to all proceeds that defendants have

3          directly or indirectly derived or earned for themselves or others from their

4          misconduct.

5    F.    For an Order disgorging Goodman of all compensation paid to him, including but

6          not limited to salary, benefits, bonuses, and other perquisites of his employment

7          relationship with Equinox during the period in which Goodman was breaching his

8          contractual, statutory and common law obligations to Equinox.

9    G.    For a return of all severance benefits paid to Baylard under the Baylard Separation

10         Agreement.

11   H.    For Equinox's actual damages in an amount to be proven at trial.

12   I.    For punitive and exemplary damages in an amount sufficient to punish defendants

13         and to deter them and others from such conduct in the future.

14   J.    For pre-judgment and post-judgment interest at the maximum rate allowed by law.

15   K.    For Equinox's reasonable attorneys' fees and costs.

16   L.    For such other and further relief as the Court deems just and proper.

17

18   DATED this 22nd day of May, 2015.

19                   GABRIEL & ASHWORTH, P.L.L.C.

20

21

22   By: _____
                 Stacy Gabriel
23               Andrew S. Ashworth
                 Attorneys for Plaintiff
24

25

26

                            21

Gabriel & Ashworth, P.L.L.C.<br>10105 E. Via Linda<br>Suite 103, No. 392<br>Scottsdale, AZ 85258<br>(480) 368-2790

## VERIFICATION

Pursuant to Rule 80(i), Arizona Rules of Civil Procedure, Stuart Taylor states as follows:

1.   I am the Vice President – Payment Solutions of Plaintiff Brookfield Equinox, LLC. I am authorized to sign this verification on behalf of the Plaintiff.

2.   I have read the foregoing Verified Complaint, and know the contents thereof and that the things therein set forth are true and accurate to the best of my information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of May, 2015.

_____
Stuart Taylor



COPY

MAY 2 2 2015

MICHAEL K. JEANES, CLERK
C. FOXEL
DEPUTY CLERK

1   Stacy M. Gabriel (#015071)
    Andrew S. Ashworth (#016356)
2   GABRIEL & ASHWORTH, P.L.L.C.
    10105 E. Via Linda
3   Suite 103, No. 392
    Scottsdale, Arizona 85258
4   (480)368-2790
    andrew@gabrielashworth.com
5
    Attorneys for Plaintiff
6

7              IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

8                 IN AND FOR THE COUNTY OF MARICOPA
9

10  BROOKFIELD EQUINOX, LLC, an          )   No.:   CV2015-004547
    Arizona corporation,                 )
11                                        )
              Plaintiff,                  )
12                                        )   CERTIFICATE ON COMPULSORY
    vs.                                   )   ARBITRATION
13                                        )
    MITCHELL GOODMAN, an individual;     )
14  LLOYD BAYLARD, an individual; PAX    )
    TECHNOLOGY, INC.,  a Florida         )
15  corporation; BLACK & WHITE           )
    CORPORATIONS I-X, and JOHN AND       )
16  JANE DOES I-X.                       )
                                         )
17           Defendants                  )
                                         )
18                                       )

19

20         The undersigned certifies that he knows the dollar limits and other limitations set forth by

21  the local rules of practice for the applicable superior court, and further certifies that this case is

22  not subject to compulsory arbitration, as provided by Rules 72 through 76 of the Arizona Rules of

23  Civil Procedure.

24

25

26

1    DATED this 22nd day of May, 2015.

2                    GABRIEL & ASHWORTH, P.L.L.C.

3

4                    By:  _____

5                         Stacy Gabriel
                          Andrew S. Ashworth
6                         Attorneys for Plaintiff

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                              2

*Email only*

**COPY**

1   Stacy M. Gabriel (#015071)
    Andrew S. Ashworth (#016356)
2   GABRIEL & ASHWORTH, P.L.L.C.
    10105 E. Via Linda
3   Suite 103, No. 392
    Scottsdale, Arizona 85258
4   (480)368-2790
    andrew@gabrielashworth.com
5
    Attorneys for Plaintiff
6

7            IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

8
             IN AND FOR THE COUNTY OF MARICOPA
9

10  BROOKFIELD EQUINOX, LLC, an          )   No.: CV2015-004547
    Arizona corporation,                 )
11                                        )
           Plaintiff,                     )
12                                        )   **ORDER TO SHOW CAUSE**
    vs.                                   )
13                                        )
    MITCHELL GOODMAN, an individual;      )
14  LLOYD BAYLARD, an individual; PAX     )
    TECHNOLOGY, INC., a Florida           )
15  corporation; BLACK & WHITE            )
    CORPORATIONS I-X, and JOHN AND        )
16  JANE DOES I-X.                        )
                                          )
17         Defendants                     )
                                          )
18  _____      )

19          Upon the application of Plaintiff Brookfield Equinox, LLC and pursuant to the allegations

20  of its Verified Complaint and its Memorandum in Support of Application for Preliminary

21  Injunction,

22          IT IS HEREBY ORDERED AND DIRECTED that Defendants shall appear at a hearing

23  before this Court on the 15th day of June , 2015, at 9:15 a.m. then and there to

24  show cause, if they have any, why this Court should not make and enter a preliminary injunction

25  in the terms requested by Plaintiff.

26  Judge Warner, 101 W. Jefferson, Phoenix, ECB 512

*Gabriel & Ashworth, P.L.L.C.*
*10105 E. Via Linda*
*Suite 103, No. 392*
*Scottsdale, Arizona 85258*
*(480) 368-2790*

1    DONE IN OPEN COURT this ⟨29⟩ day of ⟨May⟩, 2015.

2

3                                        _____
                                              Judge
4
                                         **Randall H. Warner**
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                                    2

1   Stacy M. Gabriel (#015071)
    Andrew S. Ashworth (#016356)
2   GABRIEL & ASHWORTH, P.L.L.C.
    10105 E. Via Linda
3   Suite 103, No. 392
    Scottsdale, Arizona 85258
4   (480)368-2790
    andrew@gabrielashworth.com
5
    Attorneys for Plaintiff
6

7               IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

8                  IN AND FOR THE COUNTY OF MARICOPA

9

10  BROOKFIELD EQUINOX, LLC, an          )   No.: CV2015-004547
    Arizona corporation,                 )
11                                        )
          Plaintiff,                      )   **ORDER TO SHOW CAUSE**
12                                        )
    vs.                                   )
13                                        )
    MITCHELL GOODMAN, an individual;     )
    LLOYD BAYLARD, an individual; PAX    )
14  TECHNOLOGY, INC., a Florida          )
    corporation; BLACK & WHITE           )
15  CORPORATIONS I-X, and JOHN AND       )
    JANE DOES I-X.                       )
16                                        )
          Defendants                      )
17                                        )
                                          )
18  _____     )

19          Upon the application of Plaintiff Brookfield Equinox, LLC and pursuant to the allegations

20  of its Verified Complaint and its Memorandum in Support of Application for Preliminary

21  Injunction,

22          IT IS HEREBY ORDERED AND DIRECTED that Defendants shall appear at a hearing

23  before this Court on the _____ day of _____, 2015, at _____ a.m., then and there to

24  show cause, if they have any, why this Court should not make and enter a preliminary injunction

25  in the terms requested by Plaintiff.

26

1       DONE IN OPEN COURT this _____ day of _____, 2015.

2

3

                                       _____

4                                           Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## Andrew Ashworth

| | |
|---|---|
| **From:** | TurboCourt Customer Service <CustomerService@TurboCourt.com> |
| **Sent:** | Tuesday, May 26, 2015 3:23 PM |
| **To:** | andrew@gabrielashworth.com |
| **Subject:** | AZTurboCourt E-Filing Courtesy Notification |

PLEASE DO NOT REPLY TO THIS EMAIL.

A party in this case requested that you receive an AZTurboCourt Courtesy Notification.

AZTurboCourt Form Set #1434393 has been DELIVERED to Maricopa County.

You will be notified when these documents have been processed by the court.

Here are the filing details:
Case Number: CV2015-004547 (Note: If this filing is for case initiation, you will receive a separate notificati
when the case # is assigned.)
Case Title: Brookfield Equinox,LLC v. Goodman et al.
Filed By: Andrew S Ashworth
AZTurboCourt Form Set: #1434393
Keyword/Matter #:
Delivery Date and Time: May 26, 2015 3:23 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records
only.)


Attached Documents:
Preliminary Injunction: Plaintiff Brookfield Equinox, LLC's Application for Preliminary and Permanent
Injunction
Proposed Order/Judgment (Supporting): Order to Show Cause

1  Stacy M. Gabriel (#015071)
   Andrew S. Ashworth (#016356)
2  GABRIEL & ASHWORTH, P.L.L.C.
   10105 E. Via Linda
3  Suite 103, No. 392
   Scottsdale, Arizona 85258
4  (480)368-2790
   andrew@gabrielashworth.com
5
   Attorneys for Plaintiff
6

7            IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

8              IN AND FOR THE COUNTY OF MARICOPA

9
   BROOKFIELD EQUINOX, LLC, an          )    No.: CV2015-004547
10 Arizona corporation,                  )
                                         )
11          Plaintiff,                    )    **PLAINTIFF BROOKFIELD**
                                         )    **EQUINOX, LLC 'S APPLICATION**
   vs.                                   )    **FOR PRELIMINARY AND**
12                                       )    **PERMANENT INJUNCTION AND**
   MITCHELL GOODMAN, an individual;      )    **ISSUANCE OF ORDER TO SHOW**
13 LLOYD BAYLARD, an individual; PAX     )    **CAUSE, AND REQUEST FOR**
   TECHNOLOGY, INC.,  a Florida          )    **EXPEDITED EVIDENTIARY**
14 corporation; BLACK & WHITE            )    **HEARING**
   CORPORATIONS I-X, and JOHN AND        )
15 JANE DOES I-X.                        )
                                         )
16          Defendants.                   )
                                         )
17 _____)

18        Plaintiff Brookfield Equinox, LLC ("Equinox") through undersigned counsel and pursuant

19 to A.R.S. §12-1801, *et seq.* and Rule 65(d), Ariz. R. Civ. P., respectfully requests that the Court

20 enter an Order to Show Cause why it should not issue a preliminary and permanent injunction

21 against the defendants, and set an evidentiary hearing on Equinox's application for injunctive relief

22 ("Application") at the earliest possible opportunity.

23        Defendants have illegally conspired to divert business away from Equinox through the

24 improper use of Equinox's confidential and trade secret information.  There is incontrovertible

25 proof that Defendant Mitchell Goodman ("Goodman") was secretly providing sensitive Equinox

26 customer information to Defendant PAX Technology, Inc. ("PAX"), a direct competitor of

1  Equinox, *while Goodman was still employed by Equinox*. Defendants' improper use of Equinox's

2  confidential and trade secret information continued after Goodman resigned from Equinox, and

3  continues to this day. Equinox faces immediate and irreparable harm unless defendants are

4  enjoined from continuing with their improper actions.

5       The Application is supported by the following Memorandum of Points and Authorities and

6  the Verified Complaint filed herein.

7  **MEMORANDUM OF POINTS AND AUTHORITIES**

8  **I.**     **FACTUAL AND PROCEDURAL BACKGROUND**

9       Equinox is a provider of payment processing systems[1]. Equinox designs, manufactures and

10  sells a wide array of payment terminals, and provides associated applications and services, to

11  customers throughout the United States. Equinox's principal place of business is in Scottsdale,

12  Arizona. Equinox acquired the assets of Equinox Payments, LLC ("Equinox Payments") in

13  February 2014, including its payment processing business and the right to use the Equinox name.

14       The preservation of confidential business information, including information concerning its

15  customers, is of paramount importance to Equinox. Equinox operates in a highly competitive

16  business environment and is engaged in the design, manufacture, marketing, sale and support of

17  sophisticated technology that handles sensitive consumer financial information. Equinox takes

18  many steps to preserve its confidential information, such as requiring that all employees sign a

19  Confidentiality Agreement as a condition of employment that confirms they will strictly maintain

20  the integrity of that information, both during and after their employment with Equinox, a directive

21  that is reiterated in its Employee Handbook. Equinox operates a secure facility with badge access

22  that is further segregated into zones that can only be accessed by properly authorized personnel.

23  Electronic data is accessible to certain designated personnel using an encrypted password.

24       Defendant PAX Technology, Inc. ("PAX") is a direct competitor of Equinox. PAX has

25

---

26  [1] Unless stated otherwise, the factual support for this Memorandum is set forth in the Verified Complaint filed herein.

2

1   engaged in a systematic and calculated raid of Equinox personnel for the purpose of building and

2   selling a new line of retail payment terminals known as PX5 and PX7, that are specifically designed

3   for the North American market in competition with Equinox's products.  PAX has targeted for hire

4   specific Equinox personnel who were instrumental in developing, marketing and selling the

5   Equinox products that compete with PX5 and PX7 so it could exploit for its own financial benefit

6   the proprietary and trade secret information that the targeted personnel acquired during their

7   respective employment at Equinox and/or Equinox Payments.

8          Defendant Goodman was previously employed by Equinox Payments as a sales executive.

9   Goodman's duties and responsibilities were to identify and pursue sales opportunities for Equinox

10   Payments, with a primary emphasis on major accounts.  When Equinox acquired the assets of

11   Equinox Payments, Equinox offered Goodman, and he accepted, employment by Equinox as a

12   major accounts sales executive.  As a condition of his hire by Equinox, Goodman signed and agreed

13   to be bound by a Confidentiality and Intellectual Property Agreement (the "Goodman

14   Confidentiality Agreement").  This agreement, *inter alia*, obligated Goodman, both before and after

15   the termination of his employment, to strictly preserve and not disclose any of Equinox's

16   Confidential Information.

17          One of the major accounts of Equinox is Sears, Roebuck & Company ("Sears").  Equinox

18   entrusted Goodman to serve as the primary sales contact on the Sears account; as such, he became

19   intimately familiar with Equinox's business relationship with Sears.  On or about August 2014,

20   Sears issued a request for proposal ("RFP") to provide payment processing terminals for its K-Mart

21   division.  This represented a significant business opportunity for Equinox that Equinox aggressively

22   pursued.  The Equinox sales team, led by Goodman, put together a response to the K-Mart RFP and

23   submitted the response to Sears on or about October 2014.  After that time, Equinox participated in

24   various follow up meetings and requests for information from Sears, from which Equinox

25   reasonably concluded its RFP was being viewed favorably by Sears.

26          Goodman gave seven days' notice of his resignation from Equinox on April 24, 2015, with

3

1   his last day of employment being May 1, 2015. Goodman was evasive about his future plans, and

2   would not confirm that he was going to work for PAX. Unbeknownst to Equinox, not only was

3   Goodman going to work for PAX, he had intended to do so at least since November 2014. But

4   Goodman and PAX did much more than simply keep Goodman's future employment plans a secret

5   from Equinox. Equinox has recently discovered that while Goodman was still employed by

6   Equinox, Goodman and PAX were actively conspiring to sabotage Equinox's customer

7   relationships and business opportunities and to divert that business to PAX.

8          PAX primarily carried out this conspiracy through Defendant Baylard. Baylard is also a

9   former Equinox Payments sales employee who was tasked by PAX with raiding Equinox's

10  customer base and key sales personnel. PAX implemented this scheme by recruiting Goodman in

11  late 2014 and then, over a series of months while it continued to work on its PX5 and PX7 terminal

12  range (with the assistance of former Equinox developers and technical personnel that PAX had

13  previously hired away from Equinox), directing Goodman to feed Baylard with sensitive Equinox

14  business information to enable PAX to divert the K-Mart and other business away from Equinox

15  once its terminals were market ready.

16         Equinox has documentary evidence of secret communications between Goodman and PAX

17  that occurred between November 2014 and Goodman's resignation from Equinox in May 2015.

18  The level of duplicity reflected in these communications is astounding. While he was still

19  employed and getting paid by Equinox, Goodman provided PAX, through Baylard, with the names

20  of the very same Equinox customers he called upon on behalf of Equinox, and coached PAX how

21  to secure that business.

22         Goodman's and PAX's collusion with respect to the K-Mart RFP is particularly egregious.

23  In February 2015, after Equinox's response to the K-Mart RFP had been submitted, but before any

24  award had been made, Baylard sent Goodman an email asking for the correct email address of one

25  of the key Sears employees involved in the K-Mart RFP process. Goodman did so, using his

26  personal email address. Baylard then "blind-copied" Goodman on an email to K-Mart dated

4

1   February 10, 2015 where he requested that Sears agree to a conference call to discuss a possible

2   bid from PAX for the payment processing business.  When Sears agreed to participate in such a

3   call, Baylard informed Goodman, who responded "Awesome!!!!!!!  Good luck!"

4          Immediately after quitting Equinox, Goodman sent an email to Sears, the content of which

5   was drafted by PAX, wherein he stated that - "I know you are close to finalizing the decision for

6   Kmart. We are confident PAX can meet and exceed the requirements at lower pricing than you are

7   currently planning." Since that time, the frequency of communications between Sears and Equinox

8   has diminished significantly.

9          The foregoing is a small sample of the damning communications between Goodman and

10  PAX.  These communications demonstrate that Goodman willingly revealed sensitive confidential

11  information with the express purpose of assisting PAX to divert the K-Mart and other business

12  away from Equinox, and that PAX solicited this information from Goodman knowing that the

13  information was highly confidential and that Goodman's disclosure would violate his restrictive

14  covenant obligations to Equinox.  Equinox is aware of Goodman committing other material

15  breaches of the Goodman Confidentiality Agreement in collusion with Baylard and PAX, including

16  but not limited to encouraging Equinox employees to leave Equinox's employment, downloading

17  Equinox confidential information to his personal email address, and deleting information from his

18  work computer in an attempt to cover his tracks.

19  **II.    LEGAL DISCUSSION**

20         Equinox seeks a preliminary and permanent injunction to restrain defendants from

21  improperly competing with Equinox through the use of Equinox's confidential information.  A

22  party seeking injunctive relief is obligated to establish four traditional equitable criteria: (1) a strong

23  likelihood that it will succeed at trial on the merits, (2) the possibility of irreparable injury not

24  remediable by damages if the requested relief is not granted, (3) a balance of hardships favors the

25  moving party, and (4) public policy favors the injunction.  See e.g., Shoen v. Shoen, 167 Ariz. 58,

26  63, 804 P.2d 787, 792 (App. 1990).

1   "The critical element in this analysis is the relative hardship to the parties.  To meet this

2   burden, the moving party may establish either: (1) a probability of success on the merits and the

3   possibility of irreparable injury; or (2) the presence of serious questions and 'the balance of

4   hardships tips sharply' in his favor." Shoen, Id. Equinox can comfortably meet either formulation.

5          A.     Equinox Is Likely To Prevail On the Merits Of Its Claims

6          Equinox has stated multiple causes of action against defendants.  Equinox need only

7   demonstrate that it is likely to succeed on one of these claims to satisfy the first criterion for granting

8   preliminary injunctive relief. Compass Bank v. Hartley, 430 F. Supp.2d 973, 983 (D. Ariz. 2006).

9   Equinox is likely to succeed on each of its claims.

10              1.  Duty of Loyalty

11         An employee owes his employer a fiduciary duty of loyalty that precludes him from

12  soliciting customers for a rival business before the end of his employment, or from engaging in

13  other similar acts in direct competition with his employer.  McCallister v. Kastella, 170 Ariz. 455,

14  825 P.2d 980 (1992); Sec. Title Agency, Inc. v. Pope, 219 Ariz. 480, 492, P 53, 200 P.3d 977, 989

15  (App. 2008) (an employee is precluded from actively competing with his or her employer during

16  the period of employment);  Taser Int'l, Inc. v. Ward, 224 Ariz. 389, 231 P.3d 921 (App. 2010)

17  (same); Restatement (Third) of Agency § 8.04 (2006) ("Throughout the duration of an agency

18  relationship, an agent has a duty to refrain from competing with the principal . . . .").  "[I]t is too

19  plain to need discussion that an agent is under the duty to act with entire good faith and loyalty for

20  the furtherance of the interests of his principal in all matters concerning or affecting the subject of

21  his agency, and if he fails to do so[,] he is responsible to his principal for any loss resulting

22  therefrom." Thomas v. Newcomb, 26 Ariz. 47, 51, 221 P. 226, 228 (1923).

23         Goodman has breached his duty of loyalty to Equinox, and egregiously so.  For a number

24  of months, while Goodman was still employed by Equinox, he secretly, deliberately and

25  unashamedly worked to sabotage the very business of Equinox that he was entrusted to develop.

26  In February 2015 – two months before his resignation – when he learned from PAX that it had

6

1   secured a conference call with Sears to compete with the Equinox proposal for the K-Mart business,

2   his response to PAX was "[a]wesome!!!!!!!" (all seven exclamation marks in the original email).

3   Goodman's behavior is both outrageous and reprehensible, and there is little doubt a jury will find

4   that he breached his duty of loyalty to his employer in multiple ways.

5           2.  Breach of Contract

6           As a condition of hire by Equinox, Goodman executed the Goodman Confidentiality

7   Agreement.  Goodman has breached this agreement in many ways, both before and after the end of

8   his employment.  The Goodman Confidentiality Agreement obligates Goodman to preserve the

9   integrity of Equinox's Confidential Information (as defined in the agreement).  Equinox has a

10  legitimate protectable interest in its confidential information, including information concerning its

11  customers.  Amex Distrib. Co. v. Mascari, 150 Ariz. 510, 516, 724 P.2d 596, 602 (App. 1986) ("If

12  customer information is truly confidential, and to a substantial degree inaccessible, it may be given

13  a measure of the protection accorded true trade secrets.").  Goodman breached his obligations by

14  sharing sensitive customer information, including contact details and proposed pricing, prior to the

15  termination of his employment, and has continued to misuse this information afterwards.

16          The Goodman Confidentiality Agreement also precludes Goodman from soliciting or

17  encouraging any Equinox employee to leave employment.  There is clear evidence that Goodman

18  actively encouraged at least one Equinox employee, James H. Smith, to leave.  Mr. Smith, who was

19  working alongside Goodman in securing the K-Mart business for Equinox, has since joined PAX.

20  Smith also wiped his work computer before leaving.

21          In addition, Goodman agreed that he would not attempt to divert any Equinox customer or

22  supplier for a period of 12 months following the termination of his employment.  A non-solicitation

23  covenant is presumptively enforceable in Arizona.  Olliver/Pilcher Ins., Inc. v. Daniels, 148 Ariz.

24  530, 531-32, 715 P.2d 1218, 1219-20 (1986) (noting that a contract dealing "only with preventing

25  piracy of accounts by former employees" even with a statewide scope, would not be considered

26  unreasonable or oppressive);  Hilb, Rogal & Hamilton Co of Ariz. v. McKinney, 190 Ariz. 213,

7

1   216, 946 P.2d 464, 467 (App. 1997) ("Because it is less restrictive on the employee (and thus on

2   free market forces) than a covenant not to compete, an anti-piracy agreement ordinarily is not

3   deemed unreasonable or oppressive.").

4          The fact that Goodman resides in California does not get him off the hook.  There is also a

5   long line of California cases that has repeatedly held that a former employee may be barred from

6   soliciting existing customers to redirect their business away from the former employer and to the

7   employee's new business if the employee is utilizing trade secret information to solicit those

8   customers. *See e.g.* Gordon v. Landau, 321 P.2d 456, 459 (Cal. 1958);  Muggill v. Reuben H.

9   Donnelley Corp., 398 P.2d 147 (1965),  Applied Materials, Inc. v. Advanced Micro-Fabrication

10  Equipment (Shanghai) Co., 630 F. Supp. 2d 1084, 1089 n.7 (N.D. Cal. 2009) (finding that "case

11  law amply supports the existence of" the trade secret exception).  This is precisely what Goodman

12  is doing – he has contacted his former customers at Equinox and told them that "PAX can meet and

13  exceed the requirements at lower pricing than you are currently planning."  Such a solicitation using

14  Equinox trade secret information is prohibited under California law.

15                3.   Tortious Interference with Contractual Relations and/or Expectancies

16         The elements of intentional interference with a business relationship or expectancy include;

17  (i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the

18  relationship or expectancy on the part of the interfering party; (iii) an intentional interference

19  inducing or causing a breach or termination of the relationship or expectancy; (iv) resultant damage

20  to the party whose relationship or expectancy has been disrupted; and (v) an improper motive or

21  means in the interference.  Miller v. Hehlen, 209 Ariz. 462, 471, 104 P.3d 193, 202 (App. 2005).

22         Defendants have improperly interfered in Equinox's legitimate business expectancy with

23  respect to the K-Mart RFP.  The very person who Equinox entrusted with securing this business

24  was actively conspiring with a direct competitor to enable that competitor to undercut the Equinox

25  proposal, and doing so in secret while he was still employed by Equinox.  It is difficult to conceive

26  of a more clear cut example of improper interference.  Defendants have also demonstrated their

8

1   intent to pursue other Equinox customers using the same improper means.  Goodman and PAX are

2   in the process of soliciting business away from Equinox customers by promising lower pricing or

3   otherwise misusing Equinox's confidential information.

4        In addition, PAX and Baylard have tortuously interfered in Equinox's contractual

5   relationship with Goodman.  PAX and Baylard have known of the terms of the Goodman

6   Confidentiality Agreement since at least November 2014, yet they have deliberately induced

7   Goodman to repeatedly breach his contractual obligations through disclosing confidential

8   information, and soliciting Equinox customers and employees.  Discovery will doubtless reveal the

9   price that PAX agreed to pay to Goodman in exchange for his loyalty.

10                4.   Unfair Competition

11       "The common law doctrine of unfair competition is based on principles of equity.  The

12  general purpose of the doctrine is to prevent business conduct that is contrary to honest practice in

13  industrial or commercial matters."  Fairway Constructors, Inc. v. Ahern, 193 Ariz. 122, 124, 970

14  P.2d 954 (App. 1998).

15       In Reeves v. Hanlon, 95 P.3d 513, 520-21 (Cal. 2004), the defendants wrongfully

16  "mount[ed] a campaign to deliberately disrupt plaintiffs' business."   The defendants

17  misappropriated confidential information, improperly solicited plaintiffs' clients and "purposefully

18  engaged in unlawful acts that crippled plaintiff's business operations."  Id.

19       The facts known to date present a compelling case of unfair competition. Defendants have

20  engaged in a calculated course of conduct to cripple Equinox's business operations.  Goodman

21  transmitted highly confidential information to PAX while he was still employed by Equinox, and

22  PAX used that information knowing it had been obtained improperly.  There is little doubt that

23  PAX's actions with respect to Goodman are simply a part of a greater scheme that is well underway

24  to raid Equinox of its key employees and to use their knowledge of Equinox's confidential

25  information to divert business to PAX.  The full extent of this nefarious scheme will be revealed

26

9

1   through discovery, however time is running out to prevent defendants from succeeding in their

2   scheme.

3           5.   Misappropriation of Trade Secrets

4           Defendants' unlawful use of Equinox's confidential information constitutes

5   misappropriation of trade secrets, in violation of Arizona's Trade Secrets Act, A.R.S. § 44-401, *et*

6   *seq* ("ATSA"). The ATSA expressly authorizes courts to enjoin the "[a]ctual or threatened

7   misappropriation" of a trade secret. A.R.S. § 44-402(A). The definition of a trade secret under the

8   ATSA is "expansive." Enterprise Leasing Co. of Phoenix v. Ehmke, 197 Ariz. 144, 149, 3 P.3d

9   1064, 1069 (App. 1999). It includes (1) "information" that (2) derives "independent economic

10  value, actual or potential, from not being generally known," and (3) is subject to reasonable efforts

11  to maintain its secrecy. A.R.S. § 44-401(4).

12          "Information" under the ATSA includes "a compilation of information that is continuously

13  used or has the potential to be used in one's business and that gives one an opportunity to obtain an

14  advantage over competitors who do not know of or use it." Enterprise Leasing, 197 Ariz. at 148, 3

15  P.3d at 1068. The information "need only be a slight advance over common knowledge to receive

16  protection." Id. at 150, 3 P.3d at 1070.

17          It is clear that Equinox's response to the K-Mart RFP qualifies as a trade secret. Any

18  competitor who were to obtain this information could fashion their own response to the RFP so as

19  to undercut Equinox and thereby secure a massive unfair advantage. This is precisely what

20  happened here.

21          More fundamentally, however, all of Equinox's information concerning its customers and

22  prospective customers, including names, contact information, prior orders, bidding specifications

23  and practices, costs and pricing data, new device or product information and evaluations, technical

24  requirements and so forth constitute trade secret information under ATSA. Goodman was uniquely

25  positioned to have full visibility to this information by reason of his work for Equinox, and PAX

26  only became aware of this information by reason of its illegal disclosure by Goodman. This type

10

1  of customer information is the very lifeblood of a company like Equinox, is not generally known

2  to its competitors and derives an independent economic value through not being generally known.

3  Equinox undertakes extensive efforts to maintain the secrecy of this information.

4        This type of customer information has been expressly held to constitute a trade secret. In

5  fact, courts routinely protect customer and pricing information due to its obvious value. Prudential

6  Ins. Co. of Am. v. Pochiro, 153 Ariz. 368, 371, 736 P.2d 1180, 1183 (App. 1987) (a list of

7  customers, "if their trade and patronage have been secured by years of business effort and

8  advertising and the expenditure of time and money, . . . is in the nature of a trade secret"); Morlife,

9  Inc. v. Perry, 56 Cal. App. 4th 1514, 1521, 66 Cal. Rptr. 2d 731, 735 (1997)("[W]here the employer

10  has expended time and effort identifying customers with particular needs or characteristics, court

11  will prohibit former employees from using this information to capture a share of the market.").

12  Protection is necessary to prevent a former employee from being able to "solicit both more

13  selectively and more effectively." Id. at 1522, 66 Cal. Rptr. 2d at 736.   Defendants must be

14  restrained from further misuse of Equinox's trade secrets.

15        B.    Equinox is Likely to Suffer Irreparable Harm

16        Because there is a substantial likelihood that Equinox will prevail on the merits of its claims

17  against defendants, Equinox will presumptively suffer irreparable and immediate harm if it is not

18  granted injunctive relief. See, e.g., Tracer Research Corp. v. National Envtl. Serv. Co., 843 F.Supp.

19  568, 582 (D. Ariz. 1993); Phoenix Orthopaedic Surgeons, Ltd. V. Peairs, 164 Ariz. 54, 59, 790

20  P.2d 752, 757 (App. 1990) *disapproved on other grounds* ("Once a protectable interest is

21  established, irreparable injury is presumed to follow if the interest is not protected."). This is

22  particularly true with respect to trade secrets. Lumex, Inc. v. Highsmith, 919 F. Supp. 624, 628

23  (E.D.N.Y. 1996) ("irreparable harm is presumed where a trade secret has been misappropriated.").

24        Money damages is not an adequate remedy for Equinox.  Equinox has spent years

25  developing its products and cultivating its customer relationships through the expenditure of

26  substantial time and financial resources. A loss of business and personnel is not only a direct loss

11

1    in profits but also diminishes the company in terms of its standing in the marketplace, its ability to

2    attract qualified employees, its ability to leverage economies of scale with suppliers, and so forth.

3    These damages are difficult to calculate, therefore justifying immediate injunctive relief. Superior

4    Consulting Co. v. Walling, 851 F. Supp. 839, 847 (E.D. Mich. 1994) ("[l]oss of customer goodwill

5    and fair competition can support a finding of irreparable harm. Such losses often amount to

6    irreparable injury because the resulting damages are difficult to calculate."); Ecolab Inc. v. Paolo,

7    753 F. Supp. 1100, 1110 (E.D.N.Y. 1991) ("[t]he use and disclosure of an employer's confidential

8    customer information and the possibility of loss of customers through such usage constitute

9    irreparable harm"); Hartley, 430 F. Supp.2d at 983 ("with respect to Defendant's use of confidential

10   information…the only means of effective enforcement of this provision is injunctive relief").

11         Immediate injunctive relief is required.  Equinox has already suffered a substantial

12   diminution in goodwill and employee morale, and will be financially devastated if defendants'

13   improper actions are not stopped.

14         C.    The Balance of Hardships Strongly Favors Equinox

15         Equinox faces ongoing and irreparable harm if defendants are permitted to continue with

16   their unfettered pillage of Equinox's customers and employees through unfair and improper means.

17   The hardship to defendants if injunctive relief is granted is minor.

18         The request for injunctive relief is three-fold, and each prong is narrowly tailored.  First,

19   Equinox requests that defendants be compelled to withdraw from the pending RFP from K-Mart.

20   It is readily apparent that PAX only entered a bid late in the process, after Equinox had already

21   finalized and submitted its own bid, and did so utilizing Equinox confidential information supplied

22   by Goodman for the express purpose of undercutting the Equinox bid.  As such, the PAX bid is the

23   proverbial fruit of the poisoned tree, and  defendants should not be permitted to profit from their

24   illegal acts.

25         Second, Equinox requests that defendants be restrained from using or disclosing any of

26   Equinox's confidential information.  By definition, defendants have no protectable interest

                                                    12

1  whatsoever in this information, and to the extent they know this information already, they have

2  either learned it improperly, or are otherwise under a contractual, statutory and/or common law

3  obligation to preserve it.  It cannot be a hardship for defendants to maintain the integrity of

4  information that they are not legally entitled to use in any event.

5       Third, Equinox requests that defendants be restrained from contacting or soliciting, directly

6  or indirectly, Equinox's customers or prospective customers for the duration of Goodman's 12-

7  month non-solicit period.  This is a direct contractual obligation that Goodman assumed as a

8  condition of his employment by Equinox.  Such a restriction, particularly to the extent that it

9  operates to preserve Equinox's trade secrets, is presumptively valid.  Equinox is not seeking to

10  impose a non-compete obligation on Goodman, or to stop PAX from competing in the marketplace.

11  Defendants are free to compete fairly; they simply should not be permitted to use or disclose

12  Equinox's confidential and proprietary information to engage in their anti-competitive, tortious and

13  contract-breaching activities.

14       D.    Public Policy Favors An Injunction

15       Defendants calculated anti-competitive actions are fundamentally unfair and violate public

16  policy.  A company should be able to entrust sensitive information in its key employees without

17  the risk that direct competitors will conspire with those employees to secretly use that information

18  to the company's detriment.  The necessity of good faith and honest, fair dealing, is the very life

19  and spirit of the commercial world."  Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 481-82

20  (1974).  Fairness and public policy strongly support the imposition of injunctive relief.

21  III.    CONCLUSION

22       Defendants secret illegal scheme to crush Equinox has been exposed.  Now it is time for the

23  Court, through its equitable powers, to restore the status quo.  The first step is the issuance of

24  immediate injunctive relief to protect and preserve Equinox's legitimate business interests and to

25  mitigate the damages that it continues to suffer.

26       Equinox respectfully requests that the Court issue an Order to Show Cause to defendants

and hold an expedited evidentiary hearing on the merits at the earliest available opportunity. Equinox also requests that the Court enter an expedited discovery schedule. Proposed forms of order are submitted herewith.

DATED this 26th day of May, 2015.

GABRIEL & ASHWORTH, P.L.L.C.


s/ Andrew S. Ashworth
Attorney for Plaintiff


**ORIGINAL** of the foregoing
e-filed this 26th day
of May, 2015.

s/ Andrew S. Ashworth

14

## Andrew Ashworth

| | |
|---|---|
| **From:** | TurboCourt Customer Service <CustomerService@TurboCourt.com> |
| **Sent:** | Tuesday, May 26, 2015 3:28 PM |
| **To:** | andrew@gabrielashworth.com |
| **Subject:** | AZTurboCourt E-Filing Courtesy Notification |

PLEASE DO NOT REPLY TO THIS EMAIL.

A party in this case requested that you receive an AZTurboCourt Courtesy Notification.

AZTurboCourt Form Set #1434532 has been DELIVERED to Maricopa County.

You will be notified when these documents have been processed by the court.

Here are the filing details:
Case Number: CV2015-004547 (Note: If this filing is for case initiation, you will receive a separate notification when the case # is assigned.)
Case Title: Brookfield Equinox,LLC v. Goodman et al.
Filed By: Andrew S Ashworth
AZTurboCourt Form Set: #1434532
Keyword/Matter #:
Delivery Date and Time: May 26, 2015 3:27 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)


Attached Documents:
Motion: Plaintiff Brookfield Equinox, LLC's Motion for Expedited Discovery
Proposed Order/Judgment (Supporting): Proposed Order

Stacy M. Gabriel (#015071)
Andrew S. Ashworth (#016356)
GABRIEL & ASHWORTH, P.L.L.C.
10105 E. Via Linda
Suite 103, No. 392
Scottsdale, Arizona 85258
(480)368-2790
andrew@gabrielashworth.com

Attorneys for Plaintiff

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| BROOKFIELD EQUINOX, LLC, an Arizona corporation, <br><br> Plaintiff, <br><br> vs. <br><br> MITCHELL GOODMAN, an individual; LLOYD BAYLARD, an individual; PAX TECHNOLOGY, INC., a Florida corporation; BLACK & WHITE CORPORATIONS I-X, and JOHN AND JANE DOES I-X. <br><br> Defendants. | No.: CV2015-004547 <br><br><br> **PLAINTIFF BROOKFIELD EQUINOX LLC'S MOTION FOR EXPEDITED DISCOVERY** |

Plaintiff Brookfield Equinox, LLC ("Equinox") respectfully moves this Court to enter an order permitting discovery to proceed on an expedited basis. Contemporaneous with this Motion, Equinox filed its Application for Preliminary Injunction ("Application"), seeking to enjoin defendants Goodman and Baylard from continuing to violate their reasonable and enforceable contractual restrictive covenants, and all defendants from violating their statutory and common law obligations relating to tortious interference, unfair competition and misappropriation of trade secrets. The Application is accompanied by an Order to Show Cause that will require defendants to appear at a hearing to show cause why a preliminary injunction should not issue (the

1  "Hearing").

2       Equinox seeks to engage in the limited discovery specified below that is narrowly tailored

3  to resolving the issues to be decided at the Hearing. Although Equinox already has in its

4  possession evidence that establishes a *prima facie* case that defendants have engaged in unfair

5  competition, additional discovery is necessary to better develop the record, which in turn will aid

6  the Court in resolving the issues presented in the Application. Indeed, because of the very nature

7  of defendants' misconduct, defendants have exclusive possession of much of the relevant

8  evidence that will support Equinox's claims. However, under the normal time limits imposed by

9  the Arizona Rules of Civil Procedure, Equinox would be precluded from conducting this

10  discovery before the expiration of forty (40) days after service of the summons and complaint. If

11  Equinox is limited to the normal discovery time limits, discovery will not be completed in

12  advance of the Hearing, thereby frustrating Equinox's ability to receive a fair hearing on the

13  merits.

14       The Rules of Civil Procedure expressly empower the Court to expedite discovery for

15  cause and in the interest of justice. *See* Ariz. R. Civ. P. 26(d), 30(a), 30(b)(3), 33(a), 34(b). The

16  proper standard is "the conventional standard of good cause," which is "frequently found in cases

17  involving claims of … unfair competition." *See Semitool, Inc. v. Tokyo Electon Am., Inc.*, 2002

18  U.S. Dist. LEXIS 8961 (N.D. Cal. 2002). That "good cause" standard is also routinely met "in

19  cases involving requests for a preliminary injunction" because of the "expedited nature of the

20  preliminary injunction proceedings." *See Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*,

21  2001 U.S. Dist. LEXIS 17349 (D. Ariz. 2001).

22       As more fully explained in Equinox's Application, Equinox has asserted causes of action

23  for breach of duty of loyalty, breach of contract, breach of the implied duty of good faith and fair

24  dealing, tortious interference with contract and business expectancies, unfair competition,

25  misappropriation of trade secrets, and unjust enrichment. Equinox is legitimately concerned that

26  unless discovery is accelerated, active and prospective customer accounts will likely be diverted,

2

1  confidential, proprietary and trade secret information will be divulged, documents relevant to this

2  dispute may be destroyed, and resolution of this important and time-sensitive matter will be

3  needlessly postponed, causing irreparable harm to Equinox. By contrast, there is no legitimate

4  risk of prejudice or undue burden to defendants if the request is granted.

5      Equinox requests that the Court enter an order permitting discovery to proceed pursuant to

6  the following schedule in conformance with the accompanying proposed form of Order:

7      a.  The parties shall respond to all written discovery within ten (10) calendar days after

8          they are served by hand-delivery or e-mail to the other party or after the Court signs

9          the Order for Expedited Discovery, whichever is later.

10     b.  The following depositions shall be scheduled within (10) calendar days' after notices

11         of deposition are served by hand-delivery or e-mail to the deponent:

12             1.  Defendant Goodman;

13             2.  Defendant Baylard;

14             3.  Rule 30(b)(6) representative of defendant PAX Technology, Inc. ("PAX");

15             4.  Third party witness James H. Smith, who resigned from Equinox and joined

16                 PAX a few days after Goodman and who deleted electronically stored

17                 information from his Equinox-issued laptop computer before his departure.

18     c.  Within ten (10) calendar days after the Court signs this Order, an electronic data

19         consultant engaged by Equinox, along with an attorney and representative of Equinox,

20         shall be permitted to access and forensically inspect and image defendants' computers

21         and computer-related devices, including their work and personal computers, cell

22         phones, and any and all other electronic devices used or accessed by defendants (and,

23         in the case of PAX, that includes all employees or agents) to engage in or review any

24         communications or other documents related to the subject of Equinox's Verified

25         Complaint.

26     d.  Subpoena *duces tecum* issued pursuant to Rule 45, Ariz. R. Civ. P. with response date

3

within ten (10) calendar days after service, to:

1. James H. Smith.

2. The following Equinox customers who Goodman solicited, either directly or indirectly, on behalf of PAX during or immediately after his employment with Equinox: Sears, Roebuck & Company, Ross Stores, Walgreens, Hertz, Supervalu and Sprint.

e. Subpoena *duces tecum* issued pursuant to Rule 45, Ariz. R. Civ. P. with response date within ten (10) calendar days of service to Google, Inc. to recover e-mails from the Gmail accounts of defendants Goodman and Baylard, which Equinox has evidence they used to transmit confidential and proprietary Equinox information to PAX and to improperly solicit Equinox's customers.

Given the limited nature of Equinox's requests and the immediate threat to its business posed by defendants' legal violations, Equinox respectfully requests that the Court grant is request for expedited discovery in accordance with the Order accompanying this Motion.

DATED this 26th day of May, 2015.

**GABRIEL & ASHWORTH, P.L.L.C.**


s/ Andrew S. Ashworth
**Attorney for Plaintiff**


**ORIGINAL** of the foregoing
e-filed this 26th day
of May, 2015.


s/ Andrew S. Ashworth

4

Stacy M. Gabriel (#015071)
Andrew S. Ashworth (#016356)
GABRIEL & ASHWORTH, P.L.L.C.
10105 E. Via Linda
Suite 103, No. 392
Scottsdale, Arizona 85258
(480)368-2790
andrew@gabrielashworth.com

Attorneys for Plaintiff

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| BROOKFIELD EQUINOX, LLC, an Arizona corporation, <br><br> Plaintiff, <br><br> vs. <br><br> MITCHELL GOODMAN, an individual; LLOYD BAYLARD, an individual; PAX TECHNOLOGY, INC., a Florida corporation; BLACK & WHITE CORPORATIONS I-X, and JOHN AND JANE DOES I-X. <br><br> Defendants. | No.: CV2015-004547 <br><br> **ORDER GRANTING MOTION FOR EXPEDITED DISCOVERY** |

Pursuant to Plaintiff Brookfield Equinox, LLC's ("Equinox") Motion for Expedited Discovery and good cause showing,

IT IS HEREBY ORDERED that Equinox's Motion is GRANTED and that the following expedited discovery relevant to Equinox's application for injunctive relief is authorized:

    a.  The parties shall respond to all written discovery within ten (10) calendar days after they are served by hand-delivery or e-mail to the other party or after the Court signs this Order, whichever is later.

    b.  The following depositions shall be scheduled within (10) calendar days' after notices

Gabriel & Ashworth, P.L.L.C.
10105 E. Via Linda
Suite 103, No. 392
Scottsdale, Arizona 85258
(480) 368-2790

of deposition are served by hand-delivery or e-mail to the deponent:

    1. Defendant Goodman;

    2. Defendant Baylard;

    3. Rule 30(b)(6) representative of defendant PAX Technology, Inc. ("PAX");

    4. Third party witness James H. Smith, who resigned from Equinox and joined PAX a few days after Goodman and who deleted electronically stored information from his Equinox-issued laptop computer before his departure.

c. Within ten (10) calendar days after the Court signs this Order, an electronic data consultant engaged by Equinox, along with an attorney and representative of Equinox, shall be permitted to access and forensically inspect and image defendants' computers and computer-related devices, including their work and personal computers, cell phones, and any and all other electronic devices used or accessed by defendants (and, in the case of PAX, that includes all employees or agents) to engage in or review any communications or other documents related to the subject of Equinox's Verified Complaint.

d. Subpoena *duces tecum* issued pursuant to Rule 45, Ariz. R. Civ. P. with response date within ten (10) calendar days after service, to:

    1. James H. Smith.

    2. The following Equinox customers who Goodman solicited, either directly or indirectly, on behalf of PAX during or immediately after his employment with Equinox: Sears, Roebuck & Company, Ross Stores, Walgreens, Hertz, Supervalu and Sprint.

e. Subpoena *duces tecum* issued pursuant to Rule 45, Ariz. R. Civ. P. with response date within ten (10) calendar days of service to Google, Inc. to recover e-mails from the Gmail accounts of defendants Goodman and Baylard, which Equinox has evidence they used to transmit confidential and proprietary Equinox information to PAX and to

2

1    improperly solicit Equinox's customers.

2    IT IS FURTHER ORDERED that to preserve potentially relevant information in this case,

3    defendants and their agents, employees, and representatives are prohibited from removing,

4    altering, erasing, deleting, and/or destroying any documents (including electronically stored

5    information) or records in their possession, custody, or control, which may be relevant to the

6    issues in this lawsuit or that may lead to the discovery of admissible evidence.

7    DATED this ___ day of May, 2015.

8

9

10    By:_____
                    Maricopa County Superior Court Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

3